ACCEPTED
15-25-00067-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/19/2025 11:09 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00067-CV

In the Fifteenth Court of Appeals
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/19/2025 11:09:25 AM
CHRISTOPHER A. PRINE
Clerk

The State of Texas ex. rel. Joshua LaFountain
Appellant,

v.

BLT Management Company, LLC n/k/a BLT Support Services, LLC, et. al.
Appellees.

On Appeal from the 126th Judicial District Court, Travis County

**BRIEF FOR APPELLANT STATE OF TEXAS ex. rel.
JOSHUA LAFOUNTAIN**

Respectfully Submitted,

/s/James R. Tucker
**JAMES R. TUCKER**
State Bar No. 20272020
5522 Ellsworth Ave.
Dallas, Texas 75206
(214) 505-0097
(214) 599-8874[fax]
rusty@rustytuckerlaw.com

**ATTORNEY FOR APPELLANT STATE OF
TEXAS ex. rel. JOSHUA LAFOUNTAIN**

*Oral Argument Requested*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................ii.

IDENTITY OF PARTIES AND COUNSEL ...................................vi.

INDEX OF AUTHORITIES ...............................................................vii.

REFERENCES ...................................................................................x.

STATEMENT OF THE CASE ........................................................ 1

STATEMENT REGARDING ORAL ARGUMENT ....................................1

STATEMENT OF JURISDICTION.....................................................2

ISSUES PRESENTED FOR REVIEW ...........................................2

STATEMENT OF FACTS ................................................................3

      I. Legal Background .................................................................3

      II. Factual Background .............................................................4

SUMMARY OF ARGUMENT .......................................................5

STANDARD OF REVIEW ............................................................6

ARGUMENT .................................................................................8

    I.     The Trial Court Abused Its Discretion By Striking The
            Testimony Of Appellant's Expert Dr. Gregory Olson………………8

            A. Relator's Experts Were Identified to the Defendants
              Months Before the October 15, 2024 Deadline, So There Is
              No Unfair Surprise or Prejudice to The Defendants……………10

B. Relator's Designation of Experts Complied
with Former Rule 194.2(f)……………………………………………14

C. The Court Should Not Have Struck Plaintiff's Designation
Because It Contained No Specific Opinions at That Time…………...14

D. Dr. Olson Was More Than Qualified to Render Opinions
in This Case and His Opinions Were Relevant and Reliable…………15

E.  Dr. Olson's Methodology and Opinions Were Not Unreliable……….19

F. There is No Gap Between Dr. Olson's Methodology and
His Opinions That Justified Striking His Testimony………………….20

G. Dr. Olson's Testimony Was Not Based On
Unreliable Foundation Evidence……………………………………….20

II.      The Trial Court Abused Its Discretion by Striking the Testimony of
Appellant's Expert Sally Reaves……………………………………….21

A. Relator's Expert Sally Reaves Was Identified to the Defendants
Months Before the October 15, 2024 Deadline, So There was
No Unfair Surprise or Prejudice to the Defendants………………….21

B. Relator's Designation of Experts Complied
with Former Rule 194.2(f)…………………………………………..23

C.  The Opinions of Ms. Reaves Were Reliable……………………..24

D. Sally Reaves Was Not Unqualified to Render her Opinions……….27

E.  There Was No Gap Between Ms. Reaves Methodology and
Her Opinions That Justify Striking Her Testimony………………..28

III.     The Trial Court Erred in Refusing to Compel the
Defendants To Produce the Documents Requested
In Relator's Motion to Compel……………………………………….28

IV.    The Trial Court Erred by Refusing to Grant Relator's Motion
       To Amend Scheduling Order Due to the Defendants' Failure
       To Engage in Discovery in Good Faith…………………………………35

V.     The Trial Court Should Not Have Granted the Defendants' Second
       Amended No-Evidence Motions for Summary Judgment……………...37

       A.  Legal Standard……………………………………………………...41

       B. Legal Argument……………………………………………………..42

           1.  There are Genuine Issues of Material Fact with Respect
               to Relator's Causes of Action Pursuant to the Texas Medicaid
               Fraud and Prevention Act (Tex. Hum. Res. Code § 36.002)…….42

           (a) Medicaid CPT Code D 0145…………………………………….42

           (b) TMFPA Section 36.002(1)……………………………………….44

           (c) TMFPA Section 36.002(2)……………………………………….45

           (d) TMFPA Section 36.002(4)(B)…………………………………..47

           (e) TMFPA Section 36.002(5) ……………………………………..47

           (f) TMFPA Section 36.002(6)(A) ………………………………….48

           (g) TMFPA Section 36.002(7)(A)(B) and (C)……………………..49

           (h) TMFPA Section 36.002(13) …………………………………….51

           (i) Tex. Hum. Res. Code § 36.052…………………………………52

           (j) All Violations of the TMFPA Alleged by
               Relator Were Committed "Knowingly"…………………………53

       C. The Bear Creek Defendants' Objections to Relator's Summary
          Judgment Evidence Should Not Have Been Sustained…………….54

CONCLUSION AND PRAYER………………………………………….55

CERTIFICATE OF COMPLIANCE…………………………………..56

CERTIFICATE OF SERVICE…………………………………………57

## IDENTITY OF PARTIES AND COUNSEL

**Appellant's Counsel:**    JAMES R. TUCKER
State Bar No. 20272020
5522 Ellsworth Ave.
Dallas, Texas 75206
(214) 505-0097
(214) 599-8874[fax]
rusty@rustytuckerlaw.com

**Appellees:** BLT Management Company, LLC n/k/a BLT Support Services, LLC; BLT Dental Management Company, LLC n/k/a BLT Support Services, LLC; BLT Support Services, LLC; Buckner Marketplace Dental, LLC, d/b/a Bear Creek Family Dentistry; Pioneer Dental, PA, d/b/a Bear Creek Family Dentistry; Westcliff Dental, PA, d/b/a Bear Creek Family Dentistry; Pecan Plaza Dental, PA, d/b/a Bear Creek Family Dentistry; Spring Valley Crossing Dental, PA, d/b/a Bear Creek Family Dentistry; Plaza De Oro Dental, PA, d/b/a Bear Creek Family Dentistry; Robert E. Tafel DDS, PA, d/b/a Bear Creek Family Dentistry; Robert E. Tafel, D.D.S. P.C.; and Robert B. Tafel.

**Appellees' Counsel:**  CRAIG D. CHERRY
Email: ccherry@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710

JANE WEBRE
Email: jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701

CHRISTOPHER S. AYRES
Email: csayres@ayreslawoffice.com
R. JACK AYRES, JR.
Email: rjayres@ayreslawoffice.com
AYRES LAW OFFICE, P.C.
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231

# INDEX OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Broders v. Heise*, 924 S.W.2d 148 (Tex. 1996)…………………………… 6

*Caffe Ribs, Inc. v. State*, 487 S. W. 3rd 137 (Tex. 2016)…………………16

*City of Keller v. Wilson,* 168 S.W.3d 802 (Tex. 2005)………………….. 7

*Cox v. Helena Chem. Co.,* 630 S.W.3d 234,245 (Tex. App. 2020)………53

*Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex. 1985)…….6

*E.I. du Pont de Nemours & Co., Inc. v. Robinson*,
923 S.W.2d 549(Tex.1995)…………………………………………….. 15, 24

*ExxonMobile Corp. v. Pagayon,* 467 S.W. 3rdd, 36 (Tex. APP.-
Houston [14th District] 2015), *rev. on other grounds,*
536 S.W. 3d 499 (Tex. 2017)……………………………………………16

*Ford Motor Co. v. Ridgway,* 135 S.W.3d 598 (Tex. 2004)…………………7

*Gunn v. Fuqua,* 397 S.W.3d 358 (Tex. App.-Dallas 2013, pet. denied)…... 8

*Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386 (Tex. 2005)…………5

*Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001)……………6

*In Re Commitment of Bohanon,* 388 S.W. 3d 296 (Tex. 2012)……… 16, 24

*In re. Xerox Corp.*, 555 S.W.3d 518 (Tex. 2018)…………………………3

*JLB Builders v. Hernandez,* 622 S.W. 3d 860 (Tex. 2021)
Johnson v. Fourth Court of Appeals, 700 S.W.2d 916 (Tex. 1985)
(orig. proceeding)………………………………………………….. 40

*King Ranch, Inc. v. Chapman*, 118 S.W.3d 742 (Tex. 2003)
*Lehrer V. Zwernemann*, 14 S.W. 3d 775 (Tex. App.—Houston
[1st District] 2000, pet. denied)…………………………………………… 40

*Lehrer V. Zwernemann*, 14 S.W. 3d 775,777 (Tex. App.—Houston [1st District] 2000, pet. Denied)……………………………………………………40

*Lunsford v. Morris*, 746 S. W. 2d 471 (Tex. 1988)…………………………18, 25

*Mentis v. Barnard*, 870 S.W.2d 14 (Tex. 1994)…………………………………8

*Painter v. Amerimex Drilling*, 561 S.W. 3d 125 (Tex. 2018)………………… 40

*Puppala v. Perry,* 564 S.W. 3d 190 (Tex. APP.—Houston [1st District] 2018, no pet.)……………………………………………………17

Rayon v. Energy Specialties, Inc., 121 S.W. 3d 7 (Tex. App.—Fort Worth 2002, no pet.)……………………………………………40

*Walker v. Packer,* 827 S.W.2d 833 (Tex.1992, orig. proceeding)……………….7

**Statutes:**

False Claims Act, 31 U.S.C. §§ 3729 *et seq*…………………………………….2

Texas Civil Practice and Remedies Code Section 51.012…………………….2

Texas Government Code Section 22.220(d)……………………………………..2

Texas Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code §§ 36.001 et seq……………………………………Passim

Tex. Hum. Res. Code § 36.002……………………………………………Passim

Tex. Hum. Res. Code § 36.002(1)……………………………………… 43

Tex. Hum. Res. Code § 36.002(2)……………………………………….45

Tex. Hum. Res. Code § 36.002(4)(B)…………………………………….47

Tex. Hum. Res. Code § 36.002(5)……………………………………..47

Tex. Hum. Res. Code § 36.002(6)……………………………………… 48

Tex. Hum. Res. Code § 36.002(7)………………………………………………. 49

Tex. Hum. Res. Code § 36.002(13)…………………………………………………51

Tex. Hum. Res. Code § 36.052…………………………………………………...51

Tex. Hum. Res. Code § 36.101(a)……………………………………………….3

Tex. Hum. Res. Code § 36.102(b)……………………………………………….3

Tex. Hum. Res. Code § 36.102(c)……………………………………………….3

Tex. Hum. Res. Code § 36.104……………………………………………….2

Tex. Hum. Res. Code § 36.110……………………………………………….3

Tex. Hum. Res. Code § 36.111……………………………………………… 9

Texas Rules of Evidence Rule 401…………………………………………17, 25

Texas Rules of Evidence Rule 402…………………………………………17, 25

Texas Rules of Evidence Rule 702…………………………………………15, 23

**Other Authorities:**

Texas Rule of Appellate Procedure 9.4(i)(1)……………………………………55

Texas Rule of Appellate Procedure 9.4(e)………………………………………55

Tex. R. App. P. 25.1(d)(9)(A)……………………………………………….2

Tex. R. Civ. Proc. 193.6…………………………………………………9, 20

Tex. R. Civ. Proc. 194.2…………………………………………………14, 23

# REFERENCES

"APP.___" or "TAB ___" refers to Appellant's Appendix.

"CR. ___" cites the Clerk's Record.

"Supp. CR. ___" cites the Clerk's Supplemental Record.

"RR" cites the Reporter's Record.

"TMFPA" refers to Tex. Hum. Res. Code § 36.001, et seq., which was formerly known as the Texas Medicaid Fraud Prevention Act. As of September 1, 2023, the TMFPA was amended and is now known as the Texas Health Care Program Fraud Prevention Act ("THFPA"). All events relevant to this action occurred before September 1, 2023, so this appellant's brief refers to the statute as the TMFPA.

"Bear Creek Defendants" collectively refers to Defendants BLT Management Company, LLC n/k/a BLT Support Services, LLC; BLT Dental Management Company, LLC n/k/a BLT Support Services, LLC; BLT Support Services, LLC; Buckner Marketplace Dental, LLC, d/b/a Bear Creek Family Dentistry; Pioneer Dental, PA, d/b/a Bear Creek Family Dentistry; Westcliff Dental, PA, d/b/a Bear Creek Family Dentistry; Pecan Plaza Dental, PA, d/b/a Bear Creek Family Dentistry; Spring Valley Crossing Dental, PA, d/b/a Bear Creek Family Dentistry; Plaza De Oro Dental, PA, d/b/a Bear Creek Family Dentistry; Robert E. Tafel DDS, PA, d/b/a Bear Creek Family Dentistry; Robert E. Tafel, D.D.S. P.C.; and Robert B. Tafel.

## STATEMENT OF THE CASE

*Nature of the Case*: Relator/Appellant brought this action on behalf of the State of Texas alleging that the Defendants committed unlawful acts in violation of one or more provisions of the TMFPA as set forth in his Fourth Amended Petition, CR. 4-61. Specifically, Relator's Fourth Amended Petition alleges that the Bear Creek Defendants violated Tex. Hum. Res. Code §§ 36.001 and 36.002 by committing one or more "unlawful acts" under Texas law. Relator also sought to impose civil remedies under Tex. Hum. Res. Code § 36.052 on the Bear Creek Defendants. *Id.*

*Trial Court:* 126th District Court of Travis County, Texas, the Honorable Aurora Martinez Jones Presiding

*Course of Proceedings*: Relator Joshua LaFountain ("Relator") filed his Original Petition on March 19, 2012. Supp. R. 3. After initially intervening in the case to pursue the case in the Administrative Courts, the State later declined to stay intervened in the case, and the case was unsealed as to all Bear Creek Defendants on December 14, 2017 Supp. R. 4-6. On March 6, 2024, Relator filed his Fourth Amended Petition. CR. 4-61. On February 4, 2025, Judge Lyttle granted Defendants' Motion to Exclude or Strike the Testimony of Sally Reaves, 62-130, and granted an identical motion, CR. 131-198, regarding Dr. Gregory Olson. CR.526, 527. On February 25, 2025, the Bear Creek Defendants filed their Second Amended No-Evidence Motions for Summary Judgment, 530-570, which the trial court granted on March 31, 2025. CR. 701.

*Trial Court Disposition*: The Trial Court granted the Defendants' Second Amended No-Evidence Motions for Summary Judgment in its Summary Judgment Order on or about March 31, 2025. CR 701. That Order also sustained all of the Defendants' Objections to Relator's Summary Judgment evidence. *Id.*

## STATEMENT REGARDING ORAL ARGUMENT

This Court should grant oral argument because this case raises significant issues regarding the TMFPA and because Oral Argument would assist the Court in understanding the complexities of the issues in this appeal.

## STATEMENT OF JURISDICTION

The Fifteenth Court of Appeals has jurisdiction of this case pursuant to Section 51.012 of the Texas Civil Practice and Remedies Code, and under Section 22.220(d) of the Texas Government Code. This appeal involves a matter brought by or on behalf of the State. Tex. R. App. P. 25.1(d)(9)(A).

## ISSUES PRESENTED FOR REVIEW

(1) Whether the Trial Court Abused Its Discretion by Striking the Testimony of Appellant's Expert Dr. Gregory Olson;

(2) Whether the Trial Court Abused Its Discretion by Striking the Testimony of Appellant's Expert Sally Reaves;

(3) Whether the Trial Court Abused Its Discretion by refusing to compel the Defendants to Produce ANY of the documents requested to be produced by the Relator in his Motion to Compel Production of Documents;

(4) Whether the Trial Court erred in Denying Relator's Motion to Amend Scheduling Order;

(5) Whether the Trial Court Should have granted the Defendants' Second Amended No-Evidence Motions for Summary Judgment and the objections to Relator's Summary Judgment Evidence; and

(6) Whether the Affidavit of Relator raised fact issues sufficient to preclude summary judgment on one or more issues even if this Court determines that the Motions to Strike the Appellant's Experts were properly Granted.

## I.  Legal Background

### A. The Texas Medicaid Fraud Prevention Act

The Texas Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code §§ 36.001 *et seq.* is a "powerful tool for targeting fraud against the Texas Medicaid program and securing the program's integrity." *In re. Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018). Similar to the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA"), the TMFPA authorizes the attorney general, as well as private citizens via *qui tam* provisions, to pursue a TMFPA action on the government's behalf. Tex. Hum. Res. Code §§ 36.101-36.117 ("Actions by Private Persons"); *Xerox*, 555 S.W.3d at 525. These private persons ("relators") initiating *qui tam* actions under the TMFPA do so in the State's name, Tex. Hum. Res. Code § 36.101(a), and must file their complaint under seal, *id.* at § 36.102(b). The State must either elect to intervene in the case and take over the action or decline to do so, which leaves the relator to continue to litigate the case in the State's name but without the State's participation. *Id.* at §§ 36.102(c), 36.104.

The TMFPA incentivizes *qui tam* relators to file suit by requiring that they receive a share of the proceeds of the action. Tex. Hum. Res. Code § 36.110 ("Award to Private Plaintiff"). Where the State intervenes, the relator is "entitled" to receive between 15 and 25 percent of the proceeds of the action; where the State declines to

3

intervene, the relator is "entitled" to between 25 and 30 percent of the proceeds of the action.4 *Id.* at § 36.110(a), (a-1).

## II.    Factual Background

From approximately 2004 until 2007, Relator was an employee of Buckner Marketplace Dental, LLC (hereinafter "Buckner Clinic") and was office manager of the Buckner Clinic during that time. In the course of his duties, he would oversee the day-to-day operations of the Buckner Clinic, including but not limited to billing, scheduling of patients and employees, ordering supplies, and other duties. CR. 597-598, par. 2.

Starting in 2007 and continuing until his employment ended in 2012, Relator was an employee of BLT Management Company n/k/a BLT Support Services, LLC, LLC (hereinafter referred to as "BLT Management" or "BLT"). In the course of his duties, it was his responsibility to assist in the management and development of the operations of seven (7) different clinics owned or operated by BLT and its affiliates or predecessors listed in paragraph 5 below. CR. 598, par. 3.

In the course of his duties as office manager at the Buckner Dental Clinic and thereafter as an employee of BLT overseeing the operations of the Bear Creek Dental Clinics listed above, for the time frame 2004 until 2012, he personally observed numerous actions by multiple dentists, employees, and agents of one or more Bear

4

Creek dental clinics which were systematically designed to defraud Medicaid in violation of the TMFPA. CR 599-600.

Based upon the actions he observed at Bear Creek, Relator/Appellant brought this action on behalf of the State of Texas alleging that the Defendants committed unlawful acts in violation of one or more provisions of the TMFPA as set forth in his Fourth Amended Petition, CR. 4-61. Specifically, Relator's Fourth Amended Petition alleges that the Bear Creek Defendants violated Tex. Hum. Res. Code §§ 36.001 and 36.002 by committing one or more "unlawful acts" under Texas law. Relator also sought to impose civil remedies under Tex. Hum. Res. Code § 36.052 on the Bear Creek Defendants. *Id.*

## SUMMARY OF THE ARGUMENT

This Court should reverse the trial Court's Orders in this case for the following reasons:

(1) The Trial Court Abused Its Discretion by Striking the Testimony of Appellant's Expert Dr. Gregory Olson, CR. 527;

(2) The Trial Court Abused Its Discretion by Striking the Testimony of Appellant's Expert Sally Reaves CR. 526;

(3) The Trial Court Abused Its Discretion by refusing to compel the Defendants to Produce ANY of the documents requested to be produced by the Relator in his Motion to Compel Production of Documents contained in Relator's Second, Third and Fourth Request for Production of Documents CR. 528;

(4) The Trial Court Abused its Discretion in Denying Relator's Motion to Amend Scheduling Order CR. 529;

5

(5) The Trial Court Should have denied the Defendants' Second Amended No-Evidence Motions for Summary Judgment, CR. 530-570, and the objections to Relator's Summary Judgment Evidence, CR. 701, for the reasons set forth below under the legal sufficiency standard; and

(6) Even if this Court determines that the Motions to Strike the Appellant's Experts were properly Granted, the Affidavit of Relator, CR. 597-679, nevertheless raised fact issues sufficient to preclude summary judgment on one or more issues such as the failure to use fluoride varnish as a violation of the TMFPA as discussed below.

**STANDARD OF REVIEW**

This Court reviews an order granting no-evidence summary judgment under a legal sufficiency standard, reviewing the evidence in the light most favorable to the non-movant and disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). A no-evidence summary judgment is properly granted "when the evidence offered to prove a vital fact is no more than a mere scintilla". *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750_51 (Tex. 2003) *Id*. "Thus, a no-evidence summary judgment is improperly granted if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id*. More than a scintilla of evidence exists where the evidence, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).

6

In determining whether the non-movant has produced more than a scintilla of evidence, the appellate court reviews the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex. 2004) ; *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). A court abuses its discretion when it renders an arbitrary decision, lacking support in the facts and circumstances of the case." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding).

With respect to the Court's Orders striking the testimony of Relator's experts Dr. Olson and Ms. Reaves, CR. 526, 527, as well as the Court's Orders Denying Relator's Motion to Compel, CR. 528, and Motion to Amend Scheduling Order, CR. 529, those are reviewed based upon an abuse of discretion standard. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles such that the ruling was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). With regard to an expert witness' qualifications and reliability of testimony, the standard of review is an abuse of discretion. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex. 2001); *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). Similarly, a late designation of expert witnesses is also the abuse of discretion standard. *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994).

The standard of review for an appeal involving the trial Court's entering discovery orders is also whether the trial court abused its discretion. *Walker v. Packer,* 827 S.W.2d 833, 841 (Tex.1992, orig. proceeding). A court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker*, at 839-40. The trial court's enforcement of its scheduling order is also reviewed for abuse of discretion. *Id.* ; *Gunn v. Fuqua,* 397 S.W.3d 358, 377 (Tex. App.-Dallas 2013, pet. denied).

**ARGUMENT**

## I. THE TRIAL COURT ABUSED ITS DISCRETION BY STRIKING THE TESTIMONY OF APPELLANT'S EXPERT DR. GREGORY OLSON

The Trial Court entered a scheduling Order in this matter on or about January 17, 2024, a copy of which was attached as an Exhibit to the Defendants' Motion to Strike Dr. Olson's testimony, CR. 77-81. The Bear Creek Defendants first substantive "responses" (primarily objections) to Relator's discovery did not take place until on or about April 5, 2024, almost three (3) months after the Scheduling Order was entered. Thereafter, however, in response to Relator's Second, Third and Fourth Requests for Production of documents, CR. 210-237, the Bear Creek Defendants steadfastly objected to producing **ANY** documents in response to over 60 requests, all of which were perfectly designed to lead to the discovery of

admissible evidence. *Id.* To that end, Relator rightfully filed a Motion to Compel the production of those documents. CR. 199-237.

The only documents produced by Bear Creek were a few documents from Relator's personnel file while he was employed by Bear Creek (after conferring with counsel for Relator on a proposed motion to compel), as well as some charts of Bear Creek patients for certain doctors requested by Relator. However, a majority of these charts were incomplete as Relator's counsel advised Defense counsel numerous times, CR. 242, 243, as they were missing critical portions thereof such as x-rays and progress notes, etc.

The problems encountered with flash drives and a laptop provided by Bear Creek purporting to contain complete charts was an absolute disaster from a discovery standpoint. The issues experienced by Relator's expert witness in attempting to view these charts are documented thoroughly in an Affidavit of Dr. Gregory Olson, one of Relator's experts, which was attached to Relator's Motion to Amend Scheduling Order discussed below as Exhibit "B". Because the Clerk's Record inadvertently did not contain Exhibit "B", Appellant has included the Affidavit of Dr. Olson in an Appendix (hereinafter "APP.___") to Appellant's Brief.

**A. Relator's Experts Were Identified to the Defendants
Months Before the October 15, 2024 Deadline, So There Is
<u>No Unfair Surprise or Prejudice to The Defendants</u>**

On or about May 8, 2024, Relator's counsel was provided documents for the first time in the form of a flash drive that contained data regarding certain patient charts requested by Relator. Counsel for the Bear Creek Defendants knew that these charts were going to be reviewed by a dentist expert from e-mail communications. CR 451. However, when Relator's counsel forwarded the flash drive to his expert dentist witness, Dr. Gregory Olson, it was discovered by him that an overwhelming majority of the x-rays and images for most all of the charts could not be viewed. APP. p. 2, par. 6; CR. 242, 243. Defense counsel knew full well as of May, 2024, that the Relator had hired a dental expert witness to review the charts in question, as Relator counsel relayed the contents of emails between the expert and Relator counsel regarding problems with the charts CR. 242-245.

Tex. R. Civ. Proc. 193.6 provides that a party can't offer the testimony of a witness who was not "timely identified" unless the Court finds that:

(1) there was good cause for the failure to timely make, amend or supplement the discovery response; or
(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

In this case, there is both good cause to admit the testimony, and the Defendants were most definitely nor surprised or prejudiced by the lack of formal designation until 3 weeks after the October 15, 2024 deadline. Dr. Olson couldn't

give his full and complete opinions until the Defendants produced full and complete charts that didn't have missing information, whereupon he could complete his analysis of those complete charts if the Trial Court would have compelled their production; unfortunately, that Motion to Compel the production of complete charts was denied.

More importantly, there was absolutely no prejudice to or surprise to the Defendants by the formal designation being 3 weeks after the deadline. As reflected in the Affidavit of Dr. Olson, he received a flash drive from counsel for Relator containing certain patient charts requested by Relator in late May of 2024. APP. p. 2, par. 6. Upon a review of said charts on the flash drive, however, he discovered that many of the images in the charts on the flash drive were not viewable. APP. p.2, par. 6; CR. 241-243.

Following that Dr. Olson prepared a "No Image Found" list of patients whose images he could not view and forwarded it to Relator's counsel, who in turn provided it to counsel for Bear Creek. APP. pp. 2-3, par. 7. CR. 242-243. Thereafter, in mid-July of 2024, he received another flash drive from Relator's counsel Mr. Tucker which he understood the purpose to be to provide the missing images among other data from the No Image List he prepared. *Id.* However, the second flash drive flash drive proved to be even more problematic than the first one. *Id.* On August 2, 2024, upon receiving the new flash drive, he was unable to access ANY information on

the images in question. *Id.* To troubleshoot the issue, he even went to IT support with the software company involved (Dexis) with the flash drive, but was still unable to open the images after consulting with them. *Id.*; APP. p3, par. 7.

Following that, he learned that the Defendants and their counsel had loaded the charts onto a laptop which was provided to Relator's counsel in October of 2024. CR. 243. Mr. Tucker forwarded the laptop to Mr. Olson which he received on or about October 21, 2024. *Id.*; APP. p. 3, par. 8. Notably, this was 6 days AFTER the October 15, 2024 expert disclosure deadline. How could Gregory Olson possibly have an expert report prior to the deadline when the first time he had received a few completed charts was not until 6 days after the expert designation deadline?

Upon his review of the charts on the laptop, however, he reported to Relator's counsel via e-mail dated November 15, 2024 that he was still unable to view images and/or complete records on a majority of the charts provided as there were numerous charts with ledgers that showed x-rays that were not attached in the files as well as missing progress notes. APP. p. 3, par. 9; CR. 243. He further stated: "In short, for the majority of patients on the computer, the documentation is incomplete". *Id.*

During this time period, counsel for Relator had communications with counsel for the Defendants requesting that all complete charts be produced that were requested. CR. 244. Because the Defendants refused to comply with that request,

Plaintiff had to file a Motion to Compel, CR. 199-237, the production of the charts requested in Plaintiff's Third Request for Production of Documents CR. 216-231.

After further more extensive review of the charts on the laptop, Dr. Olson informed Relator's counsel in a January 15, 2025 e-mail that most of the charts were still lacking complete information. APP. p. 4, par. 11; CR. 244. He informed Mr. Tucker that in his experience as an expert the chart review he was attempting was far more difficult than a typical expert review, even questioning whether the failure to produce complete charts was intentional. *Id.*

After further review, he informed Relator's counsel via email dated January 21, 2025 that a majority of the 90 charts contained on the laptop for the 5 doctors involved contained incomplete or missing information:

Here are the numbers of incomplete charts…

Benitez—34 of 50 missing x-rays and chart notes
Shafi—4 of 10 missing x-rays and chart notes
Zarrabi—8 of 10 missing either all records or x-rays and chart notes
Evans—4 of 9 missing either all records or x-rays and chart notes (one patient labeled a duplicate in the production)
Henegar—1 of 10 missing either all records or x-rays and chart notes
APP. p. 5, par. 13; CR. 245.

Despite the fact that a majority of the charts on the laptop lacked missing information such as x-rays or progress notes or both, Relator's counsel asked Gregory Olson to go ahead and prepare an expert opinion based on his review of the charts on the laptop that were complete. Accordingly, attached to Relator's Response to Motion to Exclude his testimony as Exhibit "A" was his expert report. CR. 467-

489. As stated therein, however, he still needed to review all of the completed charts requested by Relator in order to give a more definitive opinion. CR. 472.

**B. Relator's Designation of Experts Complied with Former Rule 194.2(f)**

At the time of Relator's Designation of Experts, Relator disclosed what information he had at that time, which was the general parameters of what Dr. Olson was going to testify to. He then clarified in his expert opinion what those specific opinions were. The Defendants contended broadly that Plaintiff had more than enough time to prepare his expert designations and file them before the deadline. CR. 134. Time was not the issue, however, as the Defendants ignored the fact that due to the Defendants' problems with the attempts to produce charts described above, Relator's expert did not have any viewable charts until AFTER the designation deadline. The Defendants should not be able to take the position that Dr. Olson was not properly designated and at the same time fail to produce ANY complete charts for Dr. Olson to review until after that deadline. That is absurd!

**C. The Court Should Not Have Struck Plaintiff's Designation Because It Contained No Specific Opinions at That Time**

With regard to Plaintiff's designation, the Defendants stated that Dr. Olson's opinion did not identify the doctors charts that Dr. Olson will opine about or identify which categories of treatment Dr. Olson will opine were improper or excessive. CR. 135. This ignores the fact that due to the Defendants not providing charts, Dr. Olson

14

had not reviewed **any** of the complete charts at the time of the designation. As is often the case, Relator indicated that he would timely supplement that info with more specific detail, which Relator did in the detailed expert report of Dr. Olson attached to Relator's Response to Motion to Strike as Exhibit "A". CR. 466-489. This supplement was well before the then current discovery deadline and was timely. He specified in detail what charts of what doctors were reviewed, and what his opinions were after reviewing the completed charts he was able to review. *Id.* As reflected in his report, he was still requesting complete charts for the majority of charts that were provided that contained missing information. CR. 472. Plaintiff timely supplemented his designation of experts which is exactly what Plaintiff disclosed at the time of his initial designation. CR. 151-155.

### D. Dr. Olson Was More Than Qualified to Render Opinions in This Case and His Opinions Were Relevant and Reliable

The Defendants remarkably contend that Dr. Olson is "unqualified" to render opinions in this case, stating that he was "unqualified to testify as to any category of allegedly improper or excessive treatment in the field of general dentistry". CR 136. Dr. Olson has been practicing dentistry for over 30 years, and his C.V. makes clear that he is more than qualified to render opinions in this case. CR. 174-196.

It is also curious that the Defendants allege that he should not be allowed to testify about damages or penalties and remedies under the TMFPA. CR 137. This is ironic because in the Defendants in their Motion to Strike testimony of Sally Reaves,

15

CR. 62-130, discussed below, they contended that she was not qualified to testify about TMFPA remedies and penalties because she was not a dentist or medical professional. Yet Dr. Olson is a dentist and he testified in his Opinion that there were deviations from the standard of care for dentists that amounted to violations of one or more provisions of the TMFPA. CR 466-489. If a dentist can't do it, and a data analytics expert can't do it in the Defendants' eyes, then it begs the question of who can? Clearly, Relator's two experts working together should have been able to testify as to the available remedies and penalties applicable to the violations of the TMFPA.

Rule 702 of the Texas Rules of Evidence provides that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue". TEX. R. EVID. 702. "To be relevant, the proposed testimony must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995) In compliance with *Robinson*, Dr. Olson's testimony was "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."

When an expert's opinion is predicated on a particular set of facts, those facts need not be undisputed. An expert's opinion is only unreliable if it is contrary to

16

actual, undisputed facts. *Caffe Ribs, Inc. v. State*, 487 S. W. 3rd 137, 144 (Tex. 2016).

Dr. Olson's opinions in his initial report as well as his expert report, CR. 466-489,

were not contrary to any undisputed facts in this case.

Expert testimony assists the trier of fact when the expert's knowledge and

experience on a relevant issue are beyond that of an average juror and the testimony

assists the trier of fact understand the evidence or determine a fact issue. *In Re*

*Commitment of Bohanon,* 388 S.W. 3d 296, 304 (Tex. 2012). There is no question

but that the extensive analysis performed by Dr. Olson in his expert report, CR. 466-

489, pertained to relevant issues well beyond the ability of an average juror. He has

30 years of experience in treating patients similar to those patients in this case, CR.

466-489, so the testimony he planned to give was well within his area of expertise.

The Defendants took the position that Dr. Olson couldn't testify as to general

dentistry because he is a pediatric dentist. CR. 137. That reasoning makes no sense

because all of the patients whose charts he reviewed were children, rendering him

even more qualified to render opinions in this case. Moreover, it is well settled that

"a physician from one school of practice may testify about the negligence of a

physician of a different school of practice so long as the subject of inquiry is common

to and equally recognized and developed in both fields. Thus, in determining

whether a doctor is qualified to testify on a specific issue before it, the trial court

should not focus on the specialty of the medical expert." *ExxonMobile Corp. v.*

*Pagayon,* 467 S.W. 3rdd, 36, 52 (Tex. APP.—Houston[14th District] 2015) , *rev's on other grounds,* 536 S.W. 3d 499 (Tex. 2017); See also: *Puppala v. Perry,* 564 S.W. 3d 190,202 (Tex. APP.—Houston [1st District] 2018, no pet.).

Here the analysis is very simple. A tooth is a tooth. If you bill Medicaid inappropriately for procedures or conduct unnecessary procedures on a tooth such as a filling or crown not being needed, the standard for violations of Medicaid guidelines in violation of the TMFPA would be the same whether the dentist was a general or pediatric dentist.

The Defendants' position that Dr. Olson's opinion did not comply with Rules 401 and 402 of the Texas Rules of Evidence, CR. 136, because it is not relevant was also incorrect. Rule 401 provides that "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." The relevant facts here are whether the conduct of the Defendants rose to the level of violating the TMFPA. Dr. Olson clearly gives his opinions in his expert report that there were multiple violations of the TMFPA in the categories of improper treatment he discussed. CR. 466-489.

Rule 402 of the Texas Rules of Evidence provides that "Relevant evidence is admissible unless any of the following applies…). None of these exceptions delineated in Rule 402 are applicable here. The Texas Rules of Evidence do not contemplate exclusion of otherwise relevant proof unless the evidence offered is

unfairly prejudicial, privileged, incompetent or otherwise legally inadmissible. *Lunsford v. Morris*, 746 S. W. 2d 471, 473 (Tex. 1988). The evidence being offered by Dr. Olson was none of those.

The Defendants' contention that Dr. Olson's testimony does not have a reliable foundation, CR. 138, 139, is also untrue. Dr. Olson testified in his expert opinion as to estimated times to perform certain procedures based on his education, training and experience. CR. 466-489. That analysis was attached as Exhibit "2" to his Expert Report, and his analysis is supported by reputable authority set forth therein. CR. 486-489.

To be relevant, the proposed testimony must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Robinson*, 923 S.W.2d at 556. Based on Dr. Olson's experience and detailed analysis, his proposed testimony is most definitely sufficiently tied to the facts of the case that it would have aided the jury in resolving these factual disputes. Dr. Olson testifies in his Expert Report to multiple violations of the TMFPA, CR. 466-489, and his testimony regarding same would certainly have assisted the jury far beyond what a typical juror would have knowledge of.

### E. Dr. Olson's Methodology and Opinions Were Not Unreliable

Again, Relator designated as much as he could in his initial designation, CR. 150-155, given the lack of information provided to Plaintiff by the Defendants prior

19

to the deadline as described above. As Relator said at the time he would do, Relator timely supplemented that designation. Plaintiff could not supplement with that information until a reasonable time to review almost 200 charts after they were finally provided on a laptop after receiving them for the first time in late October of 2024 after the designation deadline. An analysis of his Expert Report, CR. 466-489, revealed very clearly that neither his methodology or opinions were unreliable.

## F. There Was No Gap Between Dr. Olson's Methodology and His Opinions That Justify Striking His Testimony

Dr. Olson satisfies all of the criteria for analyzing the analytical gap. There is no question but that his field of expertise is "legitimate". It is something he has been doing for 30 years. CR. 466-489. Further, the subject matter of his testimony is within his field of expertise. He did not base his opinions on anything but his review of the charts of patients of doctors he clearly identified in his Expert Report. *Id.* His testimony properly relies on principles involved in his field of expertise and he showed a connection between the data relied on (the charts) and the opinion offered in infinite detail in his Expert Report. *Id.*

## G. Dr. Olson's Testimony Was Not Based On Unreliable Foundation Evidence

The Defendants alleged without any foundation whatsoever that Dr. Olson's opinion should have been struck because he allegedly relied on the draft report of Sally Reaves. CR. 141. That is NOT what he has testified to. He disclosed that he

had read Ms. Reaves' report. But nowhere did he testify that he based ANY of his opinions on the draft report of Ms. Reaves. As reflected in his Expert Report he based his opinions upon his review of the completed charts he identified, no more and no less. CR. 466-489.

Simply put, it was unjust for the Defendants to refuse to produce documents necessary for Dr. Olson to provide his opinion and at the same time take the unconscionable position take that the designations were too late. For this and other reasons set forth above, it was an abuse of discretion for the Court to grant the Motion to Exclude Testimony of Dr. Olson.

## II. THE TRIAL COURT ABUSED ITS DISCRETION BY STRIKING THE TESTIMONY OF APPELLANT'S EXPERT SALLY REAVES

### A. Relator's Expert Sally Reaves Was Identified to the Defendants Months Before the October 15, 2024 Deadline, So There was No Unfair Surprise or Prejudice to the Defendants

Tex. R. Civ. Proc. 193.6 provides that a party can't offer the testimony of a witness who was not "timely identified" unless the Court finds that:

(1) there was good cause for the failure to timely make, amend or supplement the discovery response; or
(2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

In this case, there is both good cause to admit the testimony, and the Defendants were most definitely nor surprised or prejudiced by the lack of formal designation until 3 weeks after the October 15, 2024 deadline. Further, the

21

Defendants were made aware that Sally Reaves had been hired by Relator as a data analytics expert as early as March 27, 2024. CR. 495. At that time, not only did Relator's counsel forward her expert report to counsel for the Defendants. Relator's counsel gave also gave a detailed description of the contents of the expert report in an e-mail that day. CR. 495-496.

Thereafter, Relator's counsel and Sally Reaves fully cooperated with counsel for the Defendants regarding Sally Reaves as to her findings and the data she relied on to prepare her report. CR. 496-497. On April 18, 2024 (and prior to that), counsel for the Defendants discussed with Relator's counsel the manner in which Sally Reaves could forward the data she relied on in forming her opinions. *Id.* Shortly thereafter, Sally Reaves added counsel for the Defendants to a secure folder containing the data she relied on in forming her opinions. *Id.* Attached as Exhibit "A" to Relator's Response to Motion to Strike her testimony was a Supplemental Report of Sally Reeves which she prepared which as stated therein "provides supplemental information to the above referenced analysis of claims ("Analysis"), dated March 19, 2024, and in response to Defendant's Motion to Exclude or Strike the Testimony of Sally Reaves in Cause No. D-1-GV-12000277". CR. 506-523. She further clarified in her Supplemental Expert Report the data that was transferred by her via Box to counsel for the Defendants. CR. 515. Relator's counsel even allowed Sally Reaves to communicate about the data she relied upon directly with the

Defendants, which she did in an e-mail exchange on May 10, 2024 among other times. CR. 497. Significantly, the Defendants had her expert report more than 6 months prior to the designation deadline and the data she relied on more than 4 months before the deadline. The Defendants couldn't possibly claim surprise or prejudice as it pertains to expert witness Sally Reaves.

**B. <u>Relator's Designation of Experts Complied with Former Rule 194.2(f)</u>**

The Bear Creek Defendants take the position that Relator failed to comply with former Rule 194.2, CR. 65, which simply isn't the case. What more can an expert do than to provide a secure link to the actual documents that she reviewed in forming her opinions, and allowing the Defendants' counsel to ask and have answered questions about exactly what she relied on in forming her opinions? The Defendants knew exactly the same information Relator had as to what documents and data Ms. Reaves relied on, so there was no failure to comply with Rule 194.2 here whatsoever. Again, this was further clarified by Ms. Reaves in her Supplemental Expert Report. CR. 506-523.

Relator gave notice in his designation, CR 82-128, that Ms. Reaves would be analyzing additional data, CR. 84, which she did in her Supplemental Expert Report. CR. 506-523. This Supplemental Report was timely as it was well before the discovery deadline.

## C. The Opinions Of Ms. Reaves Were Reliable

Rule 702 of the Texas Rules of Evidence provides that: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue". TEX. R. EVID. 702. Ms. Reaves is a well qualified expert on analyzing data similar to what she has done in this case, and her analysis showed that the amount of excessive treatment by Dr. Benitez compared to the norms is shocking. She established that he billed Medicaid per patient on average 5 ½ times the norms for an average dentist billing Medicaid per patient during the time period set forth in her report. *Id.* Her testimony would have helped a jury understand that as described in her report, it simply wasn't possible to bill that much to Medicaid in the times she analyzed. CR. 519. Her testimony would have assisted the jury in understanding the evidence and determining fact issues, as without this analysis it would be beyond the ability of the jury to reach conclusions about the evidence without her testimony on the issues she addresses.

The Defendants objected to her time estimates to perform certain procedures such as fillings and crowns in her initial report as unreliable, CR 70, but that is not the case. These time estimates in the articles she referenced in Exhibit "A" to the Relator's Response to Motion to Strike her testimony were further supported by

technical resources, such as Relative Value Units (RVU) published by the Federal Government. CR 511-513. RVUs are used to support the calculation of health care professionals' reimbursements. *Id.*

"To be relevant, the proposed testimony must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). Ms. Reaves' testimony was "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."

Expert testimony assists the trier of fact when the expert's knowledge and experience on a relevant issue are beyond that of an average juror and the testimony assists the trier of fact understand the evidence or determine a fact issue. *In Re Commitment of Bohanon,* 388 S.W. 3d 296, 304 (Tex. 2012). There is no question but that the extensive analysis performed by Ms. Reaves in her initial report and her Supplemental Expert Report, CR. 506-523, pertained to relevant issues well beyond the ability of an average juror. She had 38 years of experience analyzing data similar to what she analyzed in this case, CR. 515-516, so the testimony she planned to give was well within her area of expertise.

The Defendants' position that her opinion did not comply with Rules 401 and 402 of the Texas Rules of Evidence, CR. 71, because it is not relevant is also incorrect. Rule 401 provides that "Evidence is relevant if (a) it has any tendency to

make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." The relevant facts here are whether the conduct of the Defendants rose to the level of violating the TMFPA, and if so, what remedies and penalties should be awarded to the State of Texas by a jury. She clearly gives her opinion that millions of dollars of fraud were committed by one doctor in violation of the TMFPA. Nothing could be more "relevant" than her testimony in this regard. As reflected above, she routinely in approximately 30 matters over the years has rendered opinions as to damages. As reflected in her Supplemental Expert Report, she had never been disqualified as an expert in her field in any of these matters during her 38 years of experience. CR 515.

Rule 402 of the Texas Rules of Evidence provides that "Relevant evidence is admissible unless any of the following applies…). None of the exceptions delineated in Rule 402 are applicable here. The Texas Rules of Evidence do not contemplate exclusion of otherwise relevant proof unless the evidence offered is unfairly prejudicial, privileged, incompetent or otherwise legally inadmissible. *Lunsford v. Morris*, 746 S. W. 2d 471, 473 (Tex. 1988). The evidence being offered by Ms. Reaves was none of those. CR. 506-523.

The Defendants' contention that Ms. Reaves testimony does not have a reliable foundation is also untrue. The Defendants attacked the sources used by her in establishing estimated times to perform certain procedures. CR 70. But that is not

the sole foundation for her opinion and her opinions are based on many other factors set forth in her analysis. CR 506-523. Ms. Reaves has further addressed that issue in her Supplemental Expert Report with reliable sources such as the RVU discussion referenced above. CR 511-513.

### D. Sally Reaves Was Not Unqualified to Render her Opinions

An examination of Ms. Reaves C.V., CR. 88-93, describing her experience is impressive, and any argument she was not qualified to do her analysis is laughable. The Defendants attack her giving opinions as to the amount of penalties and remedies set forth in the TMFPA, CR. 71, but that is what she does for a living. As reflected in her Supplemental Expert Report she performed things like medical audits and had given her opinions regarding the damage amounts involved was routine in her practice as a data analytics expert. CR 515-516. She had given expert opinions in 30 similar matters over her 38 year career which often included damage calculations, and had never been stricken as an expert. CR 515.

To be relevant, the proposed testimony must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Robinson*, 923 S.W.2d at 556. Based on her experience and detailed analysis, her proposed testimony was most definitely sufficiently tied to the facts of the case that it would have aided the jury in resolving these factual disputes.

### E. There Was No Gap Between Ms. Reaves Methodology and Her Opinions That Justified Striking Her Testimony

Sally Reaves satisfies all criteria for analyzing the analytical gap. There is no question but that her field of expertise is "legitimate". It is something she has been doing for 38 years! CR 515. Further, the subject matter of her testimony is within her field of expertise. She did not base her opinions upon giving medical testimony, but based on data that she analyzed that proved Medicaid fraud of grand proportions. CR 506-523. Her testimony properly relied on principles involved in her field of expertise and she showed a connection between the data relied on and the opinion offered in infinite detail in her initial report and substantially further detail in her Supplemental Expert Report. *Id.* The Motion to Strike her testimony should have been denied in all respects, and it was an abuse of discretion for the trial Court to strike her testimony.

### III. THE TRIAL COURT ERRED IN REFUSING TO COMPEL THE DEFENDANTS TO PRODUCE THE DOCUMENTS REQUESTED IN RELATOR'S MOTION TO COMPEL

The failure of the Court to grant any requests in Appellant's Motion to Compel was an abuse of discretion for many reasons. First, the Bear Creek Defendants stated at oral argument that they produced hundreds of boxes of documents allegedly responsive to the Relator's FIRST Request for Production in May of 2024. RR, Vol. 2 p. 28, lines 24-25; p. 29, lines 1-3. In response to Relator's Motion to Compel the Defendants flatly stated "We produced the documents…". RR Vol. 2 p.30, line 1.

28

The problem with that statement is that the hearing on Relator's Motion to Compel was pertaining to Relator's Second, Third and Fourth Requests for Production of Documents, the responses to which were not filed until way after May of 2024. Their responses to these requests were filed on August 2, 2024, CR. 413 (Second Request), September 12, 2024, CR 428 (Third Request), and January of 2025, CR 433, (Fourth Request), long after the initial "production" of documents. How can the Bear Creek Defendants possibly take the position at the hearing that they had produced documents in response to Relator's Second, Third and Fourth Requests for Production in May of 2024 when ALL of those requests were submitted well after the May 8, 2024 "production" of documents? How could they claim too have produced documents that they didn't even know were going to be requested yet? Accordingly, the Court's Ruling in failing to compel the production of ANY documents was an absolute abuse of discretion.

Relator requested in his Motion to Compel that the Bear Creek Defendants be ordered to produce documents responsive to requests set forth in Defendants' Responses to Relator's Fourth, Third and Second Requests for Production of Documents set forth in Exhibits "A", "B" and "C" to the Motion. CR. 199-237. The documents requested were reasonably calculated to lead to the discovery of admissible evidence, and the Court abused its discretion in failing to order the production of not a single document. At the hearing the trial Judge ruled against

Relator's Motion to Compel before even hearing argument hear oral argument on most of the categories of documents requested. RR 46, lines 4-9.

Because Relator was aware from his employment with the Bear Creek Defendants that there were multiple investigations and audits by the Texas Office of Inspector General and other state agencies, Relator proposed requests for production in his Fourth Request for Production of Documents designed to obtain documents related thereto. Requests 1-4 in Relator's Fourth Request for Production requested documents relating to investigations and audits by and documents passing between the Bear Creek Defendants and the Texas Attorney General's Office, OIG, Medicaid, and CMS, including information regarding charts that were audited on those occasions. CR 213-214. Nothing could be more relevant to Relator's allegations that the State of Texas (on whose behalf Relator brought this action) investigated the Bear Creek Defendants for the same type of Medicaid fraud alleged by Relator in his Fourth Amended Petition. Relator participated in putting together charts and information requested in the audits and was personally aware that some of the charts revealed improper billing to Medicaid in violation of the TMFPA. CR 604, par. 9.

With regard to Request No. 3, CR 214, seeking information regarding payment holds by the government, Relator was entitled to see that data to determine the extent of improper billings that were deemed sufficient by the State to impose

pay holds and refuse to pay Bear Creek for those billings. Request No. 4, *Id.,* requested documents passing between Bear Creek and the AG's office. All of these requests were reasonably calculated to lead to the discovery of admissible evidence.

Relator's Third Request for Production of Documents contained the following requests:

> **Request No. 1.** Please produce true and correct copies of the approximately 90 charts set forth in Exhibit "A" hereto and incorporated by reference and only those charts….CR. 219, 234, 235.

Request No. 1 requested that charts be produced of certain patients of five different doctors totaling 90 charts set forth in Exhibit "A" to the Third Request for Production. As described above, there were a multitude of problems with Bear Creek's attempted production of most of these charts, as there was missing or incomplete data in the charts provided in an overwhelming majority of the charts produced via flash drive and laptop. Relator simply requested that the Court compel the production of full and complete charts for these 90 patients with all progress notes and images/x-rays that are clearly viewable, no more and no less. At oral argument, counsel for the Defendants displayed to the Court that two charts contained x-rays, RR Vol. 2, 36-38. However, as reflected above pertaining to Dr. Olson, 34 of 50 charts of one doctor were missing information such that an expert opinion could not be rendered pertaining to same. It was an abuse of discretion for the Court to base its ruling upon seeing two complete charts without viewing the

31

charts that were incomplete as Dr. Olson stated in his Affidavit. The Court apparently accepted the Defendants' argument that complete charts were produced, RR. Vol. 3 46, lines 4-5, without any proof whatsoever offered by the Defendants other than those two charts, and contrary to sworn evidence of Dr. Olson referenced above that the charts were mostly incomplete. CR. 245, 472.

Request No. 2. Asked the Defendants to "Please produce the images/x-rays/radiographs of those patients/charts identified in Exhibit "B" hereto …These charts are more fully identified in paragraphs 32-39 of Plaintiff's Third Amended Petition. These charts request were those identified by Relator based on his personal knowledge and review of the charts in question as containing suspected Medicaid fraud in violation of the TMFPA. CR. 604, par. 9. Again, Relator simply requested that the Court compel the production of full and complete charts for these patients with images/x-rays that were clearly viewable that he personally observed improper billings and other violations of the TMFPA.

In Relator's Second Request for Production of Documents, Relator sought to compel documents responsive to certain requests. Request No. 13, CR. 436, requested documents pertaining to audit trail reports for the reason that audit trail reports would show whether any of the charts set forth in the audit had been altered or changed in any way, which could have contained evidence of covering up possible evidence of Medicaid fraud in violation of the TMFPA.

Request No. 17, CR. 437, requested documents reflecting the average amount billed to Medicaid per patient for Bear Creek dentists. These documents were important to show what average dentists at Bear Creek billed to Medicaid because there were certain dentists (Dr. Benitez in particular) who billed many multiples of what an average dentist would bill to Medicaid per an expert witness in data analytics (Sally Reaves) hired by Relator. CR. 521. This would have constituted prima facie evidence of over billing Medicaid in violation of the TMFPA.

Request Nos. 17-21, CR. 437, 438, requested documents pertaining to First Dental Home Visits and when fluoride varnish was first used at Bear Creek. Relator was aware from his own personal knowledge that the Bear Creek Defendants were billed Medicaid for First Dental Home Visits which require that fluoride varnish be used at a time when there was not even fluoride varnish present at any Bear Creek office. CR. 607-609, pars. 14-16. Also, the paperwork required to perform First Dental Home Visits was also not completed as required in order to be paid by Medicaid for these First Dental Home Visits. CR. 610, par. 18. Each and every occasion these two events occurred is a violation of the TMFPA and Relator was entitled to see those documents in an effort to prove same.

Requests Nos. 34 and 35 requested charts of two dentists pertaining to billing code 2391. CR. 441. These documents were important to show that CPT Code 2391 was improperly billed to Medicaid by the dentists in question because in a majority

of cases as personally observed by Relator they were billing for fillings when all that was done were preventive resins. CR. 604, par. 8(l). Each and every time that was done constituted a violation of the TMFPA, and Relator was entitled to the production of a sampling of those charts to demonstrate TMFPA violations.

Requests Nos. 38-41, CR. 442, 443, requested documents pertaining to Dr. Scott Ludlow, a former Bear Creek dentist, because he also filed a qui tam lawsuit alleging similar violations of the TMFPA as Relator alleged in this case, and the documents requested were related to the allegations in his lawsuit. CR. 681-698. Unfortunately, Dr. Ludlow passed away after filing his lawsuit, so Relator had no ability to depose him or obtain documents from Dr. Ludlow that supported his claims. Relator was entitled to the production of same as these documents are certainly calculated to lead to the discovery of admissible evidence given the similar allegations of violations of the TMFPA as alleged in this case.

Request Nos. 42-44 requested documents pertaining to lawsuits and arrests by Dr. Bob Tafel the owner of Bear Creek. CR. 443. The documents requested in requests 42-44 above are standard in any lawsuit, as Relator was entitled to see if there have been previous lawsuits and related actions pertaining to the allegations in this case.

The documents requested in requests 50-53, CR. 444, 445, pertained to 5 Star Dental Supply, which sold materials to the Bear Creek Defendants which Relator

knew from personal experience were substandard and in violation of Medicaid rules and regulations. CR. 619-622, pars. 39-47. Each and every time these substandard products (such as crowns, etc.) were used by dentists at Bear Creek constitute a violation of the TMFPA.

Request No. 54, CR. 445, requested documents pertaining to OSHA investigations as Relator believed that these documents would have shown that there were violations of OSHA regulations in many respects, some of which violations would have constituted violations of the TMFPA.

Request No. 55, CR. 445, requested a copy of the deposition of Dr. Tafel in a lawsuit with Dr. Shafi. This deposition is important because Dr. Shafi is a former dentist of Bear Creek involved in litigation with Bear Creek. Dr. Tafel is the owner of Bear Creek, and certain information set forth in his deposition was reasonably calculated to lead to the discovery of admissible evidence.

## IV. THE TRIAL COURT ERRED BY REFUSING TO GRANT RELATOR'S MOTION TO AMEND SCHEDULING ORDER DUE TO THE DEFENDANTS' FAILURE TO ENGAGE IN DISCOVERY IN GOOD FAITH

Because of the Defendants to produce ANY documents requested in Relator's Second, Third and Fourth Request for Production, Relator filed the Motion to Compel, CR. 199-237, discussed above. Thinking some or all of those documents would be compelled to be produced, in his Motion to Amend Scheduling Order,

Relator also requested that the Court move back all deadlines set forth in the current Scheduling Order by a period of eight (8) months, CR. 239.

As further support for the fact that the Trial Court abused its discretion in refusing to compel complete charts and failing to extend the discovery deadline and other deadlines, Appellant relies upon and incorporates by reference the arguments set forth above pertaining to the Responses to Motions to Strike the testimony of Dr. Olson and Ms. Reaves.

The Bear Creek Defendants agreed to make certain documents available for inspection and copying on May 8, 2024. To Relator's counsel's dismay, however, when he showed up to review documents and was shown a warehouse containing what he estimated to be approximately 500 boxes of documents and several filing cabinets. RR. Vol. 2, p.8, lines 17-24; CR. 240.

During the "production" of documents (more akin to obfuscating the production of documents) an overwhelming majority all of the boxes were labelled "end of day reports" (which documents were not even requested to be produced!), and there was no organization whatsoever to have documents identified responsive to specific requests. CR. 240. To that end, on May 21, 2024, counsel for Relator send an email to counsel for Bear Creek requesting that documents be produced in a manner that clearly indicates what documents are responsive to which requests, stating that it was not appropriate for Bear Creek to produce hundreds of boxes of

documents making it next to impossible to go through them all hoping to find the documents requested. CR. 240, 241. To the Relator counsel's astonishment, however, counsel for Bear Creek responded that the documents requested were produced how they were kept in the ordinary course of business! CR. 241. Are documents pertaining to fluoride varnish for example really kept in a box labelled "end of day reports" in the ordinary course of business?

With all due respect, the Bear Creek Defendants should not be able to in effect hide documents in 500 boxes labeled "end of day reports" and make Relator's counsel dig through those boxes for months or well over a year trying to find responsive documents. The Bear Creek Defendants should have been compelled to produce documents as repeatedly requested by Relator's counsel that were responsive to specific requests instead of pointing to 500 boxes labelled "end of day reports" and say that's how documents are kept in the ordinary course of business. That is absurd!

## V. THE TRIAL COURT SHOULD NOT HAVE GRANTED THE DEFENDANTS' SECOND AMENDED NO-EVIDENCE MOTIONS for SUMMARY JUDGMENT

The Bear Creek Defendants alleged in their No-Evidence Motions for Summary Judgment (hereinafter "MSJ") that the Relator had no evidence of the elements to prove multiple different causes of action; however, the summary

judgment evidence submitted in Relator's Response to MSJ contains abundant evidence which satisfies the elements of each of Relator's claims. The Affidavit of Joshua LaFountain attached to Relator's Response to the Bear Creek Defendants' Second Amended No-Evidence Motions for Summary Judgment as Exhibit "A" contained very detailed information confirming that multiple dentists were knowingly and intentionally submitting fraudulent claims to Medicaid. CR. 596-698. He was in a middle management capacity at Bear Creek and observed first-hand the fraud being committed at all seven clinics that existed at the time day in and day out for the better part of eight (8) years. CR. 599, par. 6.

The Relator set forth in great detail in said Affidavit (a) who committed Unlawful Acts in violation of the Texas Medicaid Fraud and Prevention Act ("TMFPA); (b) when the Unlawful Acts were committed; (c) which offices were involved in knowingly submitting fraudulent claims for Unlawful Acts; (d) gave detailed examples of the types of Unlawful Acts that were committed for which claims were knowingly submitted to Medicaid; (e) identified dozens of chart numbers for patients on whom fraudulent acts were committed, stating what Unlawful Acts were committed, when and by whom; (f) stated unequivocally that claims for Unlawful Acts were knowingly submitted to Medicaid; and (g) the manner in which claims were submitted to Medicaid. CR. 596-625.

Notably, a former dentist at Bear Creek filed a similar qui tam action as Relator pursuant to the TMFPA against the Bear Creek Defendants alleging similar violations of the TMFPA as alleged by Relator in this case. CR. 680-698. A copy of said Petition filed in Dallas County was attached as Exhibit "B" to Relator's Response to the Defendants' No-Evidence Motion for Summary Judgment. *Id.*

The Defendants have alleged that because the Court struck the testimony of Relator's two experts, that Relator can't prevail on any of his causes of action. CR 531. That simply isn't true for most of Relator's claims, however, as some of the allegations are a matter of the jury simply deciding factual disputes. To state the obvious, if this Court reverses the trial court's rulings striking the testimony of these experts, the whole premise of the MSJ fails and this Court should reverse the trial court's ruling granting the MSJ.

One key area where expert testimony is not required involved fraudulent billing in connection with First Dental Home Visits (CPT Code D0145). CR. 607-610, pars. 14-18. In order for those claims to be reimbursed by Medicaid, one of the requirements was that topical fluoride varnish had to be applied to all erupted teeth. CR. 607, par. 14. As reflected in Relator's affidavit, however, none of the Bear Creek offices had fluoride varnish for a period of almost two years. *Id.* During this time, thousands of CPT Code D0145 claims were billed to and paid by Medicaid. *Id.* Attached to Relator's Affidavit as Exhibit "2" was a chart of one doctor billing for

almost 1,000 of these procedures without applying fluoride varnish. CR. 630-679. This would have been a simple determination of fact by the jury and is not a matter of expert testimony. Relator contended that the billings as reflected in a chart attached to Exhibit "A" of one dentist for Code D0145 would have resulted in civil monetary remedies and penalties of over $10 Million for this one dentist alone. CM 608, 609, pars. 15-16.

The ONLY evidence before the Court regarding Code D0145 was Relator's testimony that the fluoride varnish was not applied as it was not even present in the offices, and that it was a violation of the TMFPA for the Defendants to fail to do so. Relator propounded several requests for production designed to have the Bear Creek Defendants produce documents that would have shown when they first obtained fluoride varnish, but the Defendants objected to producing any such documents. CR 437, 438. They could have produced documents refuting Relator's testimony but did not so which is very telling in Relator's view.

The evidence submitted in Relator's Response to MSJ was more than sufficient to show that there were genuine issues of material fact for the jury to decide and that the no-evidence MSJ's should have been denied. At a minimum, Relator brought forth more than a scintilla of evidence on each element of his causes of action to defeat the MSJ, which is all that is required for Relator to prevail.

## A.  Legal Standard

A Party may obtain a no-evidence Motion for Summary Judgment only when there is no evidence of one or more of the essential elements of a claim. A no-evidence summary Judgment is improperly granted if the Respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *JLB Builders v. Hernandez,* 622 S.W. 3d 860, 864 (Tex. 2021). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman,* 118 S.W. 3d 742,751 (Tex. 2003).

A fact is material if it affects the outcome of a suit under governing law. A material fact issue is genuine if evidence is such that a reasonable jury could find fact in favor of the nonmovant. *Rayon v. Energy Specialties, Inc.,* 121 S.W. 3d 7,11-12 (Tex. App.—Fort Worth 2002, no pet.). The trial court must resolve all reasonable doubts about the facts in favor of the nonmovant. *Painter v. Amerimex Drilling*, 561 S.W. 3d 125,130 (Tex. 2018); *Lehrer V. Zwernemann*, 14 S.W. 3d 775,777 (Tex. App.—Houston [1ˢᵗ District] 2000, pet. Denied).

This Court reviews an order granting no-evidence summary judgment under a legal sufficiency standard, reviewing the evidence in the light most favorable to the non-movant and disregarding all contrary evidence and inferences. *King Ranch*, *Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

41

## B. Legal Argument

### 1. There are Genuine Issues of Material Fact with Respect to Relator's Causes of Action Pursuant to the Texas Medicaid Fraud and Prevention Act (Tex. Hum. Res. Code § 36.002)

### (a) Medicaid CPT Code D 0145

Attached to Relator Josh LaFountain's Affidavit as Exhibit "1" were the requirements by the Texas Health and Human Services Commission for a First Dental Home Visit (Code D0145) to be able to be billed to and paid by Medicaid. CR. 626-629. This billing code pertains to billing Medicaid for First Dental Home Visits for children under three years old. One of the 11 requirements (requirement number 8) for Medicaid to reimburse for a First Dental Home Visit ("FDH") per the Texas Health and Human Services Commission was that topical fluoride varnish had to be applied to all of the children's erupted teeth during the visit. CR. 629. Relator personally witnessed that Bear Creek dentists started billing for this procedure in 2007; however, **none of the Bear Creek offices had any fluoride varnish until late 2009!** CR. 607, par. 14. Medicaid was billed thousands of times for Code D0145 during 2007-2009 from all Bear Creek offices knowing that no topical fluoride varnish was applied as required. *Id.*

Attached as Exhibit "2" to the Affidavit of Relator Josh LaFountain was a chart Relator assisted in preparing with consultants from Sagebrush Analytics and his attorney which was prepared from data received by them from the Texas HHSC

with respect to billing code D0145 by patients of Dr. Zarrabi, a Bear Creek dentist who worked primarily at Bear Creek's Spring Valley and Westcliff locations. CR. 607-609, pars. 15, 16; CR. 630-679. He routinely billed for Code D0145 during 2008-2009 despite not meeting Medicaid guidelines by applying topical fluoride varnish to all erupted teeth of the children in question. *Id.* The charts contained the Bill Provider Identifier Number, the NPI for the entity submitting the bill to Medicaid, the office location from which the bill to Medicaid was sent, the PCN number, the date of service, the Provider's NPI number, the Procedure Code and Description, the amount billed for the FDH Visit, and the amount paid by Medicaid. CR. 608, par. 15. It was and is Relator's contention that all of the billing for FDH Visits to Medicaid reflected in all charts for all of the patients reflected in Exhibit "2" to Relator's Affidavit constituted a violation of the TMFPA for each patient because the Medicaid requirements for reimbursement reflected in Exhibit "1" were not complied with. CR. 608, 609, pars. 15, 16. Again, these violations of the TMFPA were based on facts of which Relator had personal knowledge which created a material issue of disputed fact sufficient to defeat the No-Evidence Motion for Summary Judgment. CR. 607-610, pars. 14-18.

Relator personally worked with Dr. Zarrabi at the Spring Valley office of Bear Creek, and knows from his own personal knowledge that the Spring Valley office did not have topical fluoride varnish until late 2009. CR. 609, par. 16. As reflected

in the Exhibit "2" to Relator's Affidavit, Dr. Zarrabi billed for hundreds of Code D0145 procedures before fluoride varnish was even present in the offices, yet he billed Medicaid for the procedures anyway. CR. 608, 609, pars. 15, 16. Relator contended that this is a violation of one or more sections of the TMFPA with respect to each patient reflected in Exhibit "2" to Relator's Affidavit as it allowed Dr. Zarrabi to receive Medicaid funds which he was not authorized to receive by billing for a FDH Visit without meeting the Medicaid requirements for reimbursement. CR. 608, 609, par. 15.

Another of the 11 requirements for reimbursement by Medicaid for a FDH Visit set forth in Exhibit "1" to Relator's Affidavit was completion of an oral health questionnaire by the dentist or a member of the dentist's staff was the "Completion of an oral health questionnaire by the dentist or a member of the dentist's staff". CR. 626-629. However, in 2007 and 2008 and most of 2009 most all Bear Creek offices did not even have the oral health questionnaire paperwork in the offices for the treating dentist to fill out in order to get reimbursed for Code D0145, yet Medicaid was billed for the Code anyway despite missing the required paperwork. CR. 610, par. 18. Again, these are facts which Relator had personal first-hand knowledge of which creates an issue of material fact under the legal sufficiency standard.

## (b)TMFPA Section 36.002(1)

With respect to Tex. Hum. Res. Code § 36.002(1) the Defendants alleged that Relator had not satisfied the elements of that provision of the TMFPA. CR. 534-535, pars. 13, 14. As set forth in his Affidavit, however, as an employee of one or more of the Bear Creek Defendants for approximately eight (8) years, the Relator had specific knowledge as reflected in his attached Affidavit of Unlawful Acts in violation of this section of this section of the TMFPA for which claims were knowingly submitted to Medicaid for payment. CR. 611-12, pars. 20-22. He demonstrated knowledge that the Bear Creek Defendants made "(1) false statements or misrepresentations (2) concerning a material fact, (3) to permit the person to receive a benefit or payment under a health care program, (4) that was not authorized or that was greater than the benefit or payment that was authorized, and (5) that the person acted "knowingly". *Id.*

Perhaps the most shocking evidence satisfying all of the elements of the above cause of action was the Supplemental Affidavit and Expert Report of Sally Reeves referenced above and incorporated by reference which showed abundant fraud on behalf of Dr. Benito Benitez, a dentist employed by Bear Creek Defendants for several years, who billed Medicaid a multiple of 5 1/2 times what the average dentist would bill. As reflected in the Affidavit of the Relator, Dr. Benitez did the same type of work on patients as other general dentists at Bear Creek, and did not do any

specialty type of work that would warrant higher billings to Medicaid. CR. 605, par. 11.

### (c)TMFPA Section 36.002(2)

The Bear Creek Defendants alleged in their Motion with respect to TMFPA Section 36.002(2) that Relator had not met the elements of this section of the TMFPA. CR. 536-537, pars. 17, 18. As set forth in his Affidavit attached to his Response as Exhibit "A", however, as an employee of one or more of the Bear Creek Defendants for approximately eight (8) years, the Relator had specific knowledge as reflected in his Affidavit of Unlawful Acts in violation of this section of the TMFPA wherein the Bear Creek Defendants (1) concealed or failed to disclose information, (2) that permitted the Bear Creek Defendants to receive benefits or payments under a health care program, (3) that were not authorized or that was greater than the benefit or payment that was authorized, and (4) that the Bear Creek Defendants acted "knowingly". CR. 613, 614, pars. 24-26.

Additionally, Relator incorporates the arguments set forth above pertaining to Dr. Benitez. By definition and common sense, for Dr. Benitez to receive many multiples of what an average dentist would bill, for him to get that amount of claims paid by Medicaid, he would have to (1) conceal or fail to disclose information, (2) that permitted him to receive benefits or payments under a health care program

(Medicaid), (3) that were not authorized or that was greater than the benefit or payment that was authorized, and (4) that he acted "knowingly.

Relator incorporates the facts set forth above regarding CPT Code D0145 which further support many knowing violations of TMFPA Section 36.002(2) sufficient to preclude the granting of the Defendants' MSJ with respect to this Section of the TMFPA.

### (d) TMFPA Section 36.002(4)(B)

Next, the Bear Creek Defendants alleged in their Motion that the elements of a claim for violation of Tex. Hum. Res. Code § 36.002(4)(B) were not met. CR. 537-538, pars. 21, 22.However, Relator does indeed have evidence as reflected in his Affidavit that the Bear Creek Defendants (1) made or caused to be made, induced, or sought to induce the making of a false statement or misrepresentation, (2) concerning a material fact, (3) concerning information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to a health care program, and (4) that the Bear Creek Defendants acted "knowingly. CR. 614-615, pars. 28-30.

### (e) TMFPA Section 36.002(5)

The Bear Creek Defendants further alleged in their Motion that the elements necessary to prove a cause of action pursuant to TMFPA Section 36.002(5) were not met. CR. 543-544, pars. 31, 32. As reflected in his Affidavit, however, Relator did

know that the Bear Creek Defendants (1) paid, charged, solicited, accepted, or received a gift, money, donation, or other consideration in addition to an amount paid under a health care program, (2) as a condition to the provision of a service or product or the continued provision of a service or product, (3) the cost of such service or product was paid for, in whole or in part, under a health care program (Medicaid), (4) such gift, money, donation, or other consideration was not authorized under a health care program, and (5) that the person acted "knowingly. CR. 616, par. 32.

### (f)TMFPA Section 36.002(6)(A)

Next, the Bear Creek Defendants alleged in their MSJ that the elements necessary to prove a cause of action pursuant to TMFPA Section 36.002(6)(A) and (6)(B) were not met. CR. 545, pars. 35, 36; 546-547, pars. 39, 40. As reflected in his Affidavit, however, Relator did know that the Bear Creek Defendants (1) presented or caused to be presented a claim for payment under a health care program, (2) for a product provided or a service rendered by a person who is not licensed to provide the product or render the service, (3) a license was required to provide the product or render the service, and (4) the person that presented or caused to be presented such a claim did so "knowingly". CR. 617, pars. 34-35. In his Affidavit, the Relator specifically described that claims were indeed submitted to Medicaid by dentists who did not yet have a license to perform said services, and that the uncredentialed dentists work was actually billed under Dr. Tafel's Medicaid ID number. *Id.*

Obviously, the Bear Creek Defendants did so "knowingly" as they had knowledge of the information, acted with conscious indifference to the truth or falsity of the information, or acted in reckless disregard of the truth or falsity of the information. Because Relator had personal knowledge of billing by unlicensed dentists as he witnessed it happen on numerous occasions so there is certainly more than a scintilla of evidence to prove each of the above elements of this case of action. *Id.*

### (g) TMFPA Section 36.002(7)(A)(B) and (C)

The Bear Creek Defendants also alleged in their Motion that the elements necessary to prove a cause of action pursuant to TMFPA Section 36.002(7)(A)(B) and (C) were not met. CR. 548-551, pars. 43, 44, 47, 48, 51, and52. As reflected in his Affidavit, however, Relator did know that the Bear Creek Defendants (1) made or caused to be made a claim under a health care program; (2) for a service or product, (3) that has not been approved or acquiesced in (4) by a treating physician or healthcare provider and (5) that the Bear Creek Defendants acted "knowingly". CR. 619, pars. 39, 40. The Relator specifically stated in his Affidavit that on multiple occasions, substandard products were repeatedly used by dentists at Bear Creek under the direction of Dr. Tafel in the form of (a) crowns that were of substandard quality that had not been approved or acquiesced in by a treating physician or healthcare provider because the crowns did not meet the quality required under Medicaid guidelines; and (b) varnish for purposes of CPT Code D0145 First Dental

49

Home Visits were of substandard quality that had not been approved or acquiesced in by a treating physician or healthcare provider because the crowns did not meet the quality required under Medicaid guidelines. *Id.* Bear Creek purchased all of its supplies including crowns from a company affiliated with Bear Creek named 5 Star Dental Supply. The crowns purchased by 5 star and used by Bear Creek were grey or black market crowns. mainly from China and knock offs of 3M products, containing dangerous, cheaper metals. 5 STAR and Bear Creek were using dangerous, non-FDA approved supplies. *Id.*

With respect to TMFPA Section 36.002(7)(B), as reflected in his Affidavit, Relator did know that the Bear Creek Defendants (1) made or caused to be made a claim under a health care program, (2) for a service or product, (3) that is substantially inadequate or inappropriate when compared to generally recognized standards within the particular discipline or within the health care industry, and (4) that the Bear Creek Defendants acted "knowingly". CR. 620-621, pars. 42, 43.

Obviously, Relator's personal knowledge of having witnessed this happen on multiple occasions provides more than a scintilla of evidence that the Bear Creek Defendants (1) made or caused to be made a claim under a health care program, (2) for a service or product, (3) that is substantially inadequate or inappropriate when compared to generally recognized standards within the particular discipline or within the health care industry, and (4) that the Bear Creek Defendants acted "knowingly".

50

With respect to TMFPA Section 36.002(7)(C), as reflected in his Affidavit, Relator did know that the Bear Creek Defendants (1) made or caused to be made a claim under a health care program, (2) for a product, (3) that has been adulterated, debased, mislabeled, or that is otherwise inappropriate, and (4) that the Bear Creek Defendants acted "knowingly". CR. 621-622, pars. 45, 46. Again, the Relator specifically stated in his Affidavit that on multiple occasions, substandard products were repeatedly used by dentists at Bear Creek under the direction of Dr. Tafel as described above with respect to § 36.002(7)(A) above and incorporated by reference.

### (h) **TMFPA Section 36.002(13)**

Lastly, the Bear Creek Defendants alleged in their Motion that the elements of a claim for violation of Tex. Hum. Res. Code § 36.002(13) were not met. CR. 561, 562, pars. 75, 76. As reflected in Relator's Affidavit, however, Relator was personally aware of dozens of instances from his own observation of the Bear Creek Defendants sending "marketers" to solicit patients at Medicaid offices and otherwise with gift cards and/or other forms of remuneration to solicit potential patients. CR. 623, par. 48. Specifically, it is against Medicaid regulations to solicit patients at Medicaid offices. Per the Relator's testimony, Bear Creek had an entire marketing team to do exactly that. *Id.*

## (i)  Tex. Hum. Res. Code § 36.052

With respect to Tex. Hum. Res. Code § 36.052, for the reasons set forth with regard to ALL of the TMFPA sections and subsections set forth above and incorporated by reference, Relator has shown that the Bear Creek Defendants received payment for Unlawful Acts sufficient to entitle Relator to recover civil remedies on behalf of the State of Texas. Further, Relator would incorporate the arguments set forth above with respect to TMFPA Section 36.002(1) and CPT Code D0145 as further support for satisfying these elements. All of the above should have been sufficient to preclude the granting of the Defendants' MSJ with respect to this Section of the TMFPA.

As reflected in Exhibit "2" to Exhibit "A" in Relator's Response, there were billings for 914 patients for Code D0145 by Dr. Zarrabi without complying with one or more requirements to be reimbursed by Medicaid as set forth in Exhibit "1" to Exhibit "A". Each of those 914 instances constitutes a violation of the TMFPA entitling Relator to recover Civil Remedies pursuant to Tex. Hum. Res. Code § 36.052(a)(1-4). Relator was entitled to seek civil monetary penalties of $11,000 for each of those Unlawful Acts in violation of the TMFPA, an amount for those patients combined adding up to $10,054.000 pursuant to Tex. Hum. Res. Code § 36.052(a)(3).

## (j) All Violations of the TMFPA Alleged by
## Relator Were Committed "Knowingly"

The Bear Creek Defendants made the argument with respect to several sections of the TMFPA that Relator can't prove that they were committed knowingly. Relator had abundant knowledge from his own personal observations that Unlawful Acts in violation of various sections of the TMFPA set forth in his Fourth Amended Petition were committed knowingly. CR. 596-679. Relator had personal knowledge from (a) his interactions with Bob Tafel in the form of individual meetings, breakfast and lunch meetings, conversations before and after hours with Bob Tafel; (b) his interactions with other management of Bear Creek, (c) his attendance at meetings where it was obvious that the activities of the company were committed knowingly;  (d) his participation in government audits of the company wherein he observed charts being altered at the direction of Bob Tafel in advance of the audits; (e) from his own personal observations of the actions of the dentists involved; (f) from his review of charts identified in his Affidavit showing excessive and/or unnecessary treatment,  that said Unlawful Acts were committed knowingly; and (g) other information set forth in his Affidavit establishing that the Unlawful Acts in violation of this section of the TMFPA were committed knowingly. CR. 600-604, par. 8; 611-612, par. 20; 613, pars. 24, 25; 614-615, pars. 28, 29; 616, par. 32; 617, par. 34; 618, par. 37; 619, par. 39; 620-621, par. 42; and 621-622, pars. 45, 46.

When an appellate court finds that experts should not have been struck, reversal of a no-evidence motion for summary judgment is appropriate if, as here, Appellant has provided summary judgment evidence that raises an issue of fact on certain elements:

> "Helena has not provided any authority that would lead this court to conclude that the experts' opinions should have been struck or that a take-nothing summary judgment was appropriate due to Appellants' failure to present evidence specifically related to each of the 111 cotton fields for which Appellants sought damages. A no-evidence summary judgment is not appropriate if the nonmovant presents "some" evidence that raises an issue of fact related to the challenged element. We believe that, as set forth above, Appellants presented summary judgment evidence that raised an issue of fact on the element of causation…." *Cox v. Helena Chem. Co.,* 630 S.W.3d 234,245 (Tex. App. 2020).

## C. The Bear Creek Defendants' Objections to Relator's Summary Judgment Evidence Should Not Have Been Sustained

The Trial Court granted every single objection to Relator's Summary Judgment evidence which the Defendants contended were legal conclusions, Relator was not an expert witness, and relied on improper evidence, and the like. SUPP. CR. 15-20. Relator was not trying to provide legal conclusions or testify as an expert, nor did he rely on improper evidence. He was simply providing factual testimony in his Affidavit based on his personal knowledge that showed that there were disputed issues of material fact as to whether certain sections of the TMFPA were violated.

## CONCLUSION AND PRAYER

For the reasons set forth herein, Relator contends that the trial Court abused its discretion by striking the testimony of Appellant's experts Dr. Olson and Sally Reaves, and further abused its discretion by refusing to grant Relator's Motion to Compel Production of Documents and Motion to Amend Scheduling Order. Further, this Court should reverse the trial court's decision granting the Bear Creek Defendants' Second Amended No-Evidence Motions for Summary Judgment, as it should have been denied in all respects under the legal sufficiency standard. Plaintiff submitted enough evidence in the form of the Affidavit of Relator that shows that there are genuine issues of material fact with respect to all elements of all TMFPA causes of action in his Fourth Amended Petition. The Relator certainly provided more than a scintilla of evidence with respect to each element of each cause of action against the Bear Creek Defendants, which is all that Texas law requires. Accordingly, the Bear Creek Second Amended No-Evidence Motions for Summary Judgment should have been denied, and Appellant requests that this Honorable Court reverse the lower court's granting of said Motion.

Respectfully Submitted,

/s/James R. Tucker
**JAMES R. TUCKER**
State Bar No. 20272020
5522 Ellsworth Ave.
Dallas, Texas 75206
(214) 505-0097
(214) 599-8874[fax]
rusty@rustytuckerlaw.com

**ATTORNEY FOR APPELLANT
STATE OF TEXAS ex. rel.
JOSHUA LAFOUNTAIN**

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word, I certify that this brief contains fewer than 15,000 words, excluding portions of the brief exempt from the word count requirement under Texas Rule of Appellate Procedure 9.4(i)(1). I further certify that it complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e), as it was produced on a computer, printed in a conventional typeface no smaller than 14-point.

/s/ James R. Tucker
James R. Tucker

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing Appellant's Brief has been

sent via e-file and serve and e-mail on September 19, 2025, to:

CRAIG D. CHERRY
Bar No. 24012419
Email: ccherry@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710

JANE WEBRE
State Bar No. 21050060
Email: jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701

CHRISTOPHER S. AYRES
State Bar No. 24036167
Email: csayres@ayreslawoffice.com
R. JACK AYRES, JR.
State Bar No. 01473000
Email: rjayres@ayreslawoffice.com
AYRES LAW OFFICE, P.C.
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231

**Attorneys for Appellees**

/s/James R. Tucker
**JAMES R. TUCKER**

No. 15-25-00067-CV

---

In the Fifteenth Court of Appeals
Austin, Texas

---

The State of Texas ex. rel. Joshua LaFountain
Appellant,

v.

BLT Management Company, LLC n/k/a BLT Support Services, LLC, et. al.
Appellees.

---

On Appeal from the 126th Judicial District Court, Travis County

---

**APPENDIX TO APPELLANT'S BRIEF**

---

Respectfully Submitted,

/s/James R. Tucker
**JAMES R. TUCKER**
State Bar No. 20272020
5522 Ellsworth Ave.
Dallas, Texas 75206
(214) 505-0097
(214) 599-8874[fax]
rusty@rustytuckerlaw.com

**ATTORNEY FOR APPELLANT STATE OF
TEXAS ex. rel. JOSHUA LAFOUNTAIN**

Pursuant to Rule 38.1(k) of the Texas Rules of Appellate Procedure,

Appellant Joshua LaFountain submits this Appendix to Appellant's Brief:

**Tab 1**: Affidavit of Gregory W. Olson dated January 23, 2025.

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing Appendix to Appellant's

Brief has been sent via e-file and serve and e-mail on September 19, 2025, to:

CRAIG D. CHERRY
Bar No. 24012419
Email: ccherry@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710

JANE WEBRE
State Bar No. 21050060
Email: jwebre@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701

CHRISTOPHER S. AYRES
State Bar No. 24036167
Email: csayres@ayreslawoffice.com
R. JACK AYRES, JR.
State Bar No. 01473000
Email: rjayres@ayreslawoffice.com
AYRES LAW OFFICE, P.C.
8140 Walnut Hill Lane, Suite 830
Dallas, Texas 75231

**Attorneys for Appellees**

/s/James R. Tucker
**JAMES R. TUCKER**

TAB 1

| | |
|---|---|
| THE STATE OF TEXAS<br>Ex rel. JOSHUA LAFOUNTAIN | IN THE DISTRICT COURT |
| **Plaintiffs** | |
| V. | 126th JUDICIAL DISTRICT |
| BLT MANAGEMENT COMPANY, LLC,<br>n/k/a BLT SUPPORT SERVICES, LLC et. al. | TRAVIS COUNTY, TX |
| **Defendants** | |

STATE OF TEXAS

COUNTY OF HARRIS

## AFFIDAVIT OF GREGORY W. OLSON

BEFORE ME, the undersigned authority, personally appeared Gregory W. Olson who, being by me duly sworn, deposed as follows:

1. My name is Gregory W. Olson, BS, DDS, MS. I am over the age of twenty-one years, of sound mind, and suffer from no legal disabilities. I am legally competent to make the factual assertions and matters contained herein which are based on my personal knowledge. The statements set forth herein are true and correct.

2. A true and correct copy of my most recent C.V. is attached hereto as Exhibit "1" and incorporated by reference. I am a pediatric dentist at the UTHealth Houston School of Dentistry, Department of Pediatric Dentistry. My qualifications to render an expert opinion in this matter are set forth in my C.V. and incorporated by reference.

3. I was hired by James "Rusty" Tucker of the Law Offices of James R. Tucker, P.C. as an expert witness to review charts of patients of the Bear Creek Family Dental offices in the above styled case. This has been an extremely difficult and time consuming process that has taken much more time than a typical expert review in my experience. It has been further complicated by the fact that a majority of the charts I have been provided to review are incomplete and are missing information such as x-rays and progress notes such that I am not able to conduct an analysis of most of the charts in question. For me to properly conduct my expert review, I need full and complete charts for all of the patients described below.

4. I understand that the current discovery deadline in this case is February 14, 2025. Upon receipt of the complete charts, I will need several more months to review all of the charts and provide an informed expert opinion. I have been diligent in reviewing the charts that are complete and will render an expert report soon on my findings as to those charts.

5. I will attempt to describe the difficulties encountered in reviewing the charts thus far in the following paragraphs.

6. I received a flash drive from Mr. Tucker containing certain patient charts requested by Relator in late May of 2024. Upon a review of said charts on the flash drive, however, I discovered that many of the images in the charts on the flash drive were not viewable. To that end, on June 25, 2024, I sent an e-mail to Mr. Tucker which stated in part the following:

> ...many of the other image/x-ray files are corrupted or not there. A No Image File found error pops up. After doing some research on the technical causes, it's not something that I can easily fix from this end. I'll leave the decision up to you as to what to do next. I started to catalog the ones not working, but there are too many. We may want to ask for a resend of the image files.

7. Following that I prepared a "No Image Found" list of patients whose images I could not view and forwarded it to Mr. Tucker, who I understood in turn provided it to counsel for Bear

2

Creek. Thereafter, in mid-July of 2024, I received another flash drive from Mr. Tucker which I understood the purpose to be to provide the missing images among other data from the No Image List I prepared. However, the second flash drive flash drive proved to be even more problematic than the first one. On August 2, 2024, upon receiving the new flash drive, I informed Mr. Tucker via e-mail that I was unable to access ANY information on the images in question. To troubleshoot the issue, I even went to IT support with the software company involved (Dexis) with the flash drive, but was still unable to open the images after consulting with them. My e-mail that day read in in part:

> I worked with Dexis support for two hours this afternoon. They are still unsure of what is going on, however have escalated this to higher support. Right now, I'm waiting for a call back.
>
> If they are unable to sort it out, see below from the experts regarding formats that are acceptable (and recommended to their users).

8. Following that, I understood that the Defendants and their counsel had loaded the charts onto a laptop which was provided to Mr. Tucker in October of 2024. Mr. Tucker forwarded the laptop to me which I received on or about October 21, 2024.

9. Upon my review of the charts on the laptop, however, I reported to Mr. Tucker via e-mail dated November 15, 2024 that I was still unable to view images and/or complete records on a majority of the charts provided:

> Quick update. I've been going through the files on the computer and am still finding missing records. It might be possible in some that they assumed we'd match the chart records with the x-rays. If that is so, I'll likely need to have you check the thumb drives for certain patients.
>
> Additionally, there are numerous charts with ledgers that show x-rays that are not attached in the files as well as missing progress notes. In short, for the majority of patients on the computer, the documentation is incomplete.

3

10. In an effort to attempt to piece together all of the information on the charts via flash drive and laptop, I asked Mr. Tucker to forward to me again the second flash drive (which I had previously returned to him) so I could attempt to correlate that information with the information on the laptop to try to piece together enough information for a complete review of certain charts, which I received in November of 2024. However, this was extremely time consuming and I discovered that even with combining the information on the laptop with the flash drive, most of the charts in question were incomplete and contained missing images, progress notes, or both. .

11. After further more extensive review of the charts on the laptop, I informed Mr. Tucker in a January 15, 2025 e-mail that most of the charts were lacking complete information:

As you seek for an extension of the discovery period, stating that in addition to difficulty accessing data that was sent, many of the records were incomplete. Meaning missing progress notes and x-rays. (At least according to the ledger provided for each patient).

12. Thereafter, I notified Mr. Tucker of the fact that of the 50 charts requested for one certain doctor, Benito Benitez, 32 of the 50 charts for him contained missing information such as x-rays, progress notes, or both. I informed Mr. Tucker that in my experience as an expert the chart review I was attempting was far more difficult than a typical expert review. In an email dated January 17, 2025, I stated to Mr. Tucker as follows:

From what I've already reviewed: 32 of the 50 Benitez were missing x-rays, progress notes or both. Shafi (Bear Creek) had 5 of 10 missing complete records. Based on this, my reviewing additional records seemed futile. Initially I committed to 4 hours for a review and summary finding. The actual time has been much higher from not being able to access images, troubleshooting to then having to add extra time for ascertaining completeness of records. It makes me wonder whether or not they are not producing complete records because they don't have the records or if it is just carelessness.

Either way the review has been far more difficult than is typical for record review requests. Is it intentional?

4

13. After further review, I informed Mr. Tucker via email dated January 21, 2025 that a majority of the 90 charts contained on the laptop for the 5 doctors involved contained incomplete or missing information:

Here are the numbers of incomplete charts:
Numbers based on comparison of patient ledgers and files provided (images, progress/chart notes). These are incomplete records (labeled as missing). Some information, but not all is accounted for in the production on the laptop.

Exhibit A:
Benitez—34 of 50 missing x-rays and chart notes
Shafi—4 of 10 missing x-rays and chart notes
Zarrabi—8 of 10 missing either all records or x-rays and chart notes
Evans—4 of 9 missing either all records or x-rays and chart notes (one patient labeled a duplicate in the production)
Henegar—1 of 10 missing either all records or x-rays and chart notes

14. Again, I have been diligent in my expert review of charts in this case and having to receive information time and again and piece it all together over a period of the past almost eight (8) has been very confusing and time consuming. I would like to receive full and complete charts for the approximate 90 charts listed in the foregoing paragraph so I can complete my expert review. While I have reviewed less than half the charts due to missing and incomplete information in the charts as described above, it is important to my analysis to review all of the above charts to give an informed expert opinion. I further request that I be allowed a reasonable amount of additional time from the Court to complete this review after receiving those charts.

15. I am working with a data analytics expert hired by Mr. Tucker, Sally Reaves, who is currently analyzing certain data for me that are important to my opinions.

5

FURTHER AFFIANT SAYETH NOT.

AFFIANT

_____
GREGORY W. OLSON

SWORN TO AND SUBSCRIBED BEFORE ME this the 23rd day of January, 2025.

_____
NOTARY PUBLIC
STATE OF TEXAS
County of Harris

MY COMMISSION EXPIRES: 02-10-2024

JANET C. FENSKE
Notary Public, State of Texas
Comm. Expires 02-10-2026
Notary ID 129706166

6

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

James Tucker on behalf of James Tucker
Bar No. 20272020
rusty@rustytuckerlaw.com
Envelope ID: 105826723
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellate Briefand Appendix
Status as of 9/19/2025 11:39 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 9/19/2025 11:09:25 AM | SENT |
| Luis Garcia | | lgarcia@scottdoug.com | 9/19/2025 11:09:25 AM | SENT |
| Christopher Davis | 24050483 | cdavis@grayreed.com | 9/19/2025 11:09:25 AM | SENT |
| Rowe Ayres | 1473000 | rjayres@ayreslawoffice.com | 9/19/2025 11:09:25 AM | SENT |
| Angela Brown | 24034533 | abrown@grayreed.com | 9/19/2025 11:09:25 AM | SENT |
| Jane Webre | | jwebre@scottdoug.com | 9/19/2025 11:09:25 AM | SENT |
| Nicollette Morton | | filings@ayreslawoffice.com | 9/19/2025 11:09:25 AM | SENT |
| Christopher Ayres | | csayres@ayreslawoffice.com | 9/19/2025 11:09:25 AM | SENT |

Associated Case Party: Joshua  LaFountain

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Tucker | 20272020 | rusty@rustytuckerlaw.com | 9/19/2025 11:09:25 AM | SENT |

Associated Case Party: Buckner Marketplacce Dental, P.A. et. al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Craig Cherry | | ccherry@cjsjlaw.com | 9/19/2025 11:09:25 AM | SENT |